The Honorable Mike Everett State Senator 412 Broadway Marked Tree, AR 72365
Dear Senator Everett:
This is in response to your request for an opinion regarding Act 1105 of 1993, the relevant portion of which is codified at A.C.A. 6-18-203(b)(2) (Repl. 1993). You state that a Caucasian teacher has two children in the school district in which she teaches, and that the ratio of Caucasian to black children in this district is greater than in the district where she lives. Her third child is not yet in school, and she wishes to take this child to the district where she teaches.
Your specific question is as follows:
 Does taking a child who is not yet enrolled in school constitute a `transfer' under the second paragraph of Paragraph (b) of Act 1105 [A.C.A. 6-18-203(b)(2)]?
It is my opinion that the answer to this question is, in all likelihood, "yes." Subsection (b) of 6-18-203, as amended by Act 1105 of 1993, states as follows:
 (1) The children or wards of any person who is a public school teacher in one school district in this state, or is employed full-time by an educational cooperative, and is a resident of another school district in this state shall be entitled to be enrolled in and to attend school in either the district in which the parent or guardian resides, the district in which the parent or guardian is a public school teacher, or any district located in the county in which the main office of the educational cooperative is located.
 (2) However, beginning with the 1993-94 school year, no student may transfer to a nonresident district where the percentage of enrollment for the student's race exceeds that percentage in his resident district. Notwithstanding the foregoing, however, those students transferring to or attending a nonresident district prior to July 1, 1993, who would qualify or have qualified for such attendance pursuant to this subsection may continue to attend the school in the nonresident district.
It was clear prior to the passage of Act 1105 of 1993 that availing oneself of the statutorily created right to enroll a child in the district where a parent teaches did not result in a "transfer" as contemplated by A.C.A. 6-18-317.[1] This was the specific holding in Love v. Hill, 297 Ark. 96, 759 S.W.2d 550
(1988). It was contended in Hill that A.C.A. 6-18-317
applied to prevent enrollment of the children in the district where a parent taught. The court rejected that argument, stating:
 The making of a choice created by the statute [A.C.A. 6-18-203(b) (Supp. 1987)] does not result in a `transfer' as contemplated by 6-18-317 (Supp. 1987). The prohibition of subsection 317 is against `legal transfer,' dealt with generally in subsection 306 [see now A.C.A. 6-18-316 (Repl. 1993)], which provides for petitioning to attend school in a non-resident district, requiring the approval of both the sending and the receiving district. [Citation omitted.] The legislature did not use the term `legal transfer' in 6-18-203(b) (Supp. 1987), but referred to `enrolling' in the district where the parent teaches. There is no suggestion in this latter section that the legislature intended this process to be comparable to `legal transfer.'
297 Ark. at 100.
Act 1105 of 1993 must, in my opinion, be viewed in light of this judicial precedent. It is well-established that the legislature is presumed in enacting a statute to have in mind the judicial construction of former statutes on the subject; and it will be assumed that the legislation was enacted in light of this construction. Brown v. Davis, 226 Ark. 843,294 S.W.2d 481 (1956); Trullinger v. Rosenblum, 125 F. Supp. 758
(D.C. Ark. 1955). The legislature's use of the term "transfer" in Act 1105 (A.C.A. 6-18-203(b)(2) (Repl. 1993)) thus gains particular significance in light of Hill, supra.
The court in Hill was persuaded by the fact that the legislature did not use the term "legal transfer" in6-18-203(b), as the statute then existed, but referred instead to "enrolling" in the district where the parent teaches. In stark contrast to this former language in 6-18-203(b), the legislature has now under Act 1105 for the first time used the term "transfer" in the context of the choice created under the statute for the children of teachers. Although the former language of subsection (b) regarding the entitlement to be "enrolled" where the parent teaches was retained, I cannot conclude in light of Hill that "enrollment" is sufficiently distinguished from "transfer" under Act 1105 so as to authorize attendance under the facts presented in your question. Act 1105 was obviously intended to place a limitation upon the choice created by the statute. While it might be contended that enrollment in the first instance is distinguishable from a "transfer," this interpretation does not, in my opinion, give sufficient weight to the decisive analysis in Hill, and the presumption that the legislature was aware of that case when it enacted Act 1105.
The assertion that Act 1105 distinguishes between enrollment and transfer is also belied by the second sentence of subsection (b)(2), as added by Act 1105, which authorizes the continued attendance of "those students transferring to or attending a nonresident district prior to July 1, 1993, who would qualify or have qualified for such attendance pursuant to this subsection. . . ." According to Hill, the statutory right under the former 6-18-203(b) to enroll where a parent taught was distinguishable from a "transfer." 297 Ark. at 100. Yet this language in Act 1105 (subsection (b)(2) of 6-18-203, second sentence) reflects the view that qualifying for attendance, i.e., making the choice under 6-18-203(b), is indeed comparable to or accomplished through a transfer.
It is therefore my opinion that if faced with the question, the Arkansas Supreme Court would in all likelihood conclude that there is no distinction between enrollment and transfer under Act 1105 of 1993 (A.C.A. 6-18-203(b) (Repl. 1993)), and that enrollment in a nonresident district is prohibited where the percentage of enrollment for the child's race exceeds that percentage in his or her resident district.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely, WINSTON BRYANT Attorney General
WB:cyh
[1] Section 6-18-317 prohibits local school districts from granting "legal transfers" where either the resident or the receiving district is or has been under a desegregation-related court order, and the transfer would negatively affect the racial balance of that district. A.C.A. 6-18-317(a) (Repl. 1993).