The Honorable Larry Prater State Representative 8800 Prater Lane Cedarville, Arkansas 72932-9373
Dear Representative Prater:
This is in response to your request for an opinion on two questions concerning House Bill 1073, which is currently pending in the 2001 regular session of the Arkansas General Assembly. The bill provides in relevant part as follows:
 When a petition is filed as authorized in Amendment 38 to the Arkansas Constitution as amended by Amendment 72, to submit to the electors of a county the question of levying, increasing, decreasing or repealing a county library tax, and the petition or the sponsor of the petition requests that the question be submitted at a special election, the sponsor of the petition may be required by the county quorum court to pay a filing fee not to exceed two thousand dollars ($2,000) which shall be used to offset a portion of the cost of calling and conducting the special election.
House Bill 1073, § 1 (as engrossed 1-23-01).
You have two questions regarding this language:
 1) [M]ay the legislature place an additional requirement upon persons wishing to sponsor a petition to levy, increase, decrease, or repeal a county library tax?
 2) [May] the legislature . . . provide quorum courts the discretion as to whom it will require to pay the filing fee as a condition to submitting the petition to the voters of the county?
RESPONSE
In response to your first question, the levy of a fee on a petitioner requesting a special election under Amendment 38 is not clearly unconstitutional. The answer to this question is somewhat unclear under current law, and there is an absolute dearth of any helpful case law on point. In my opinion, however, because such a petitioner would still be entitled to have the matter presented to the voters at a general election without fee, I cannot conclude that House Bill 1073 is unconstitutional. In response to your second question, I assume you are referring to that portion of House Bill 1073 that says the "sponsor may be required by the county quorum court to pay a filing fee . . ." (emphasis added). I do not interpret this language as authorizing the county quorum courts to distinguish among sponsors on a case-by-case basis with regard to charging the fee. In my opinion the Bill authorizes quorum courts to either pass an ordinance levying the same fee on all sponsors seeking a special election, or to decline to pass an ordinance levying a fee on any sponsor. If interpreted in the manner you suggest, constitutional problems will invariably result.
Question 1 — [M]ay the legislature place an additional requirement uponpersons wishing to sponsor a petition to levy, increase, decrease, orrepeal a county library tax?
Your question necessarily inquires as to the constitutionality of House Bill 1073. It is axiomatic that the legislature may rightfully exercise the power of the people, subject only to restrictions and limitations imposed by the Arkansas or United States Constitution. Wells v. Purcell,267 Ark. 456, 592 S.W.2d 100 (1979). While the United States Constitution is a grant of powers, beyond the scope of which the federal government has no power to act, Arkansas' Constitution is a limitation of power. Its provisions list what government cannot do, and in the absence of such limiting language, the state government may act. State v. Ashley,1 Ark. 513, 538 (1839); St. Louis, I.M.S. Rwy Co. v. State, 99 Ark. 1, 14
(1911); Baratti v. Koser Gin Co., 206 Ark. 813, 817 (1944); and Smart v.Gates, 234 Ark. 858, 860 (1961).
House Bill 1073 is thus within the power of the General Assembly unless it is contrary to some provision of the Arkansas or United States Constitution.
Amendment 38 to the Arkansas Constitution, as amended by Amendment 72, provides for the levy of an annual tax on real and personal property to support a county library or library system. See Amendment 38, § 1 (as amended). The pertinent portion of this amendment states that: "[W]henever 100 or more taxpaying electors of any county shall file a petition in the County Court" asking for such a levy "the question as to whether said tax shall be levied shall be submitted to the qualifiedelectors of such county at a general or special election." Amendment 38, § 1 (as amended) (emphasis added). Section 3 of the Amendment, as amended, provides for the raising, reduction or abolition of the tax and uses substantially similar language to that used in Section 1. The same is true of Section 5, which authorizes a separate levy for the purpose of capital improvements for a county library or library system.
It is clear in my opinion that the appropriate county officials have the discretion to call a special election, or to decide that the matter will be presented to the voters at a general election. See generally, Op. Att'y. Gen. 93-140.[1] Amendment 38 does not give a petitioner an unqualified right to have the matter presented at a special election. Additionally, nothing in Amendment 38 addresses the expenses of the special election, if called. Amendment 38 is simply silent on the question of payment of the expenses of the election. I cannot conclude, therefore, that House Bill 1073 is in clear conflict with Amendment 38.
The only other potential constitutional impediment to House Bill 1073 in the Arkansas Constitution is art. 3, § 2, which provides in pertinent part that: "Elections shall be free and equal. . . ." It has been stated, however, that provisions such as this one "ha[ve] reference to the rights of the individual voter . . ." and "[do] not deny the legislature the power to provide regulations and machinery and organization for exercising the elective franchise." 29 C.J.S. Elections § 191(2). It is my opinion, therefore, that art. 3, § 2 does not restrict the legislature's ability to levy a fee against a petitioner seeking a special election.
I have also considered the provisions of the United States Constitution. State requirements levying fees in connection with elections are sometimes challenged on equal protection grounds. See United States Constitution, Amendment 14, § 1 (No state shall . . . deny to any person within its jurisdiction the equal protection of the laws"). (See also
Arkansas Constitution art. 2, §§ 3 and 18). See also, e.g., Bullock v.Carter, 405 U.S. 134 (1972) (invalidating Texas statute requiring candidates in primary to pay substantial fees to defray cost of primary). The argument is that requiring a fee in connection with various election requirements discriminates on the basis of wealth, and therefore denies equal protection of the law to those unable to afford the fee.Id. I have not found any analogous case law from this jurisdiction or any other, as to the constitutionality of charging a fee to a petitioner seeking an optional special election on a ballot measure. General case law in the area, however, indicates that such a fee may be upheld where a reasonable alternative means for ballot access is provided in the statutory scheme. Id. at 149. See also, Lubin v. Panish, 415 U.S. 709
(1974); and Brower v. State, 137 Wash.2d 44, 969 P.2d 42 (1998). In this case, the reasonable alternative means is to have the measure placed on the ballot at a general election without fee. House Bill 1073 requires no fee if the library question is placed before the voters at a general election. A petitioner who cannot afford the fee authorized by House Bill 1073 may still have his issue placed on the ballot. He simply must await a general election.
Finally, although it is not pertinent as legal precedent, I note that the charging of the expenses of a special election to a ballot measure petitioner is not unprecedented in Arkansas law. See e.g., A.C.A. §23-110-306 (requiring petitioner questioning the continuation of horseracing in a particular county to deposit a sum of money estimated to pay all expenses of the election) and A.C.A. § 23-111-306 (same for greyhound racing).
I cannot conclude, in light of the foregoing, that House Bill 1073 is unconstitutional in adding a requirement of a fee for the option of having the matter presented at a special election.
Question 2 — [May] the legislature . . . provide quorum courts thediscretion as to whom it will require to pay the filing fee as acondition to submitting the petition to the voters of the county?
In my opinion, the investment of a quorum court with discretion as to who will be required to pay the filing fee raises very obvious red flags in terms of equal protection analysis. A statute which grants quorum courts unbridled discretion in this regard will not survive constitutional scrutiny. I do not interpret House Bill 1073 as granting quorum courts this authority however. In my opinion, under House Bill 1073, a quorum court may either pass an ordinance levying a fee on all such sponsors or may opt not to impose such a fee on any sponsor. Any other interpretation of the bill will lead to constitutional problems. A court will construe the provisions of a statute, if possible, as constitutional, and will not adopt a construction that will call the constitutionality of the statute into doubt. See Arnold v. Kemp, 306 Ark. 294, 813 S.W.2d 770 (1991); andLove v. Hill, 297 Ark. 96, 759 S.W.2d 550 (1988). In my opinion, therefore, House Bill 1073 would not be interpreted as giving the county quorum courts the power to distinguish among sponsors as to the imposition of the fee. Such an interpretation would invite constitutional problems as to discriminatory implementation of the fee requirement.
In addition, absent state law to the contrary, the only way a quorum court can compel executive action is through the passage of an ordinance. See A.C.A. § 14-14-904(g); (i); (j); and (k). In my opinion, a county quorum court may not decide on an ad hoc basis, without the passage of a proper ordinance, who will pay the required fee.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] There is apparently some uncertainty as to whether Amendment 38 petitioners can opt for a special election by a statement to such effect in their petition. See Op. Att'y. Gen. 93-140, supra, and cf. A.C.A. §14-14-917 (allowing petitioners to opt for special election in Amendment 7 referendum petitions). For purposes of the legal question presented in this opinion (the constitutionality of House Bill 1073), the point is irrelevant. The petitioners would in any event retain a free option — that of a general election, for purposes of constitutional analysis.